# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SIERRA SAXERUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-00683-JAR |
| | ) | |
| T-H PROFESSIONAL & MEDICAL | ) | |
| COLLECTIONS, LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff Sierra Saxerud's Motion for Attorneys' Fees and Costs. (Doc. 63). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be granted in part.

## I.      BACKGROUND

On April 23, 2020, Plaintiff Sierra Saxerud filed a complaint in Missouri state court alleging that Defendant T-H Professional & Medical Collections, Ltd. violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"). (Doc. 4). Plaintiff claimed that Defendant called her in late November or early December 2019 concerning a debt owed to Central Illinois Radiological Associates ("CIRA"). (Doc. 4 at ¶ 6). Plaintiff primarily alleged that Defendant violated the FDCPA by falsely stating that her debt to CIRA had "hit the credit bureaus." (*Id.* at ¶ 17). Defendant removed the action to this Court on May 22, 2020. (Doc. 1).

This Court held a short jury trial beginning August 30, 2021. The parties finished presenting evidence by the end of that day and returned on August 31, 2021 to deliver closing arguments. The jury deliberated for slightly more than one hour before returning a verdict in favor

of Plaintiff. The jury awarded Plaintiff $0 in actual damages and $200 in statutory damages. (Docs. 55, 56, 61). Plaintiff now seeks $30,205.00 in attorneys' fees and $1,700.65 in costs pursuant to 15 U.S.C. § 1692k(a)(3). (Doc. 63). Defendant responds that Plaintiff is not entitled to any fees or costs considering its *de minimis* victory or, alternatively, the Court should substantially reduce the proposed fee award. (Docs. 65, 66).[1]

## II.    LEGAL STANDARD

Under the FDCPA, a debt collector must pay costs and reasonable attorneys' fees to a successful plaintiff. 15 U.S.C. § 1692k(a)(3) ("[I]n the case of any successful action to enforce the foregoing liability," the debt collector is liable to the plaintiff for "the costs of the action, together with a reasonable attorney's fee as determined by the court."). "Where a debtor brings a successful action against a debt collector for violations of the FDCPA, an award of attorney's fees is *mandatory*." *Kramer & Frank, P.C. v. Wibbenmeyer*, No. 4:05-CV-2395 RWS, 2008 WL 11390852, at *2 (E.D. Mo. Nov. 13, 2008) (emphasis in original). If the plaintiff brings a successful action, the "starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). As discussed further below, the Court may adjust the lodestar figure after considering twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (limited by *Blanchard v. Bergeron*, 489 U.S. 87 (1989)). *See also Winter v. Cerro Gordo Cty. Conservation Bd.*, 925 F.2d 1069, 1074 n.9 (8th Cir. 1991).

---

[1] Because the Court finds that Plaintiff brought a successful action under the FDCPA and Defendant has not offered any particular objections to Plaintiff's bill of costs, the Court will award the full $1,700.65 in costs.

III.    **DISCUSSION**

*De Minimis* Victory

The jury awarded Plaintiff $0 in compensatory damages and $200 in statutory damages. Defendant contends that Plaintiff is not entitled to attorneys' fees for this *de minimis* victory. There is a "split among circuit courts as to what constitutes a 'successful action' for purposes of awarding attorney fees under the FDCPA." *Schultz v. Sw. Credit Control Sys., LP*, No. 16-CV-2033-LRR, 2018 WL 9988204, at *2 (N.D. Iowa May 14, 2018) (citations omitted); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 598 n.16 (2010) ("Lower courts have taken different views about when, and whether, § 1692k requires an award of attorney's fees."). Certain courts have found that a technical violation of the FDCPA mandates a fee award even where the plaintiff has not obtained any actual or statutory damages. *See, e.g.*, *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989). Other courts have held that a "successful action" necessarily requires an award of compensatory or statutory damages. *See, e.g.*, *Dechert v. Cadle Co.*, 441 F.3d 474, 475 (7th Cir. 2006) ("The plaintiff was entitled to an award of fees and costs only if his suit could be characterized as a successful action . . . , meaning liability for either actual or statutory damages.").

While it appears the Eighth Circuit has not addressed this particular issue, the Court finds that Plaintiff brought a "successful action" against Defendant under any court of appeals' interpretation of the phrase. The jury awarded Plaintiff $200 in statutory damages after finding Defendant violated the FDCPA. *See Schultz*, 2018 WL 9988204, at *2 (emphasis added) ("The plain language of the statute requires the conclusion that a plaintiff must be awarded actual *or* statutory damages in order to be entitled to costs or attorney fees."). The gap between Plaintiff's recovery and the fee award sought does not affect this Court's determination of whether Plaintiff

brought a successful action. As courts in this circuit have noted, "the amount of attorneys' fees is often higher than the underlying damages recovered by the plaintiff" in consumer protection cases. *Pineda v. P&B Cap. Grp., LLC*, No. 4:11-503-CV-DGK, 2011 WL 6356866, at *2 (W.D. Mo. Dec. 19, 2011) (declining to reduce fee award where plaintiff only obtained $301 in damages).

Declining to award attorneys' fees where Plaintiff has obtained a favorable verdict and statutory damages would be contrary to the FDCPA's objectives of "eliminat[ing] abusive practices by debt collectors . . . and [] promot[ing] consistent State action to protect consumers against debt collection practices." *Harstad v. L.C. Sys.*, No. Civ. 12-1712 RHK/AJB, 2013 WL 1136579, at *2 (D. Minn. Jan. 29, 2013) (citation omitted); *see also Phenow v. Johnson, Rodenberg & Lauinger, PLLP*, 766 F. Supp. 2d 955, 959 (D. Minn. 2011) ("[C]onsumer-protection statutes, including the FDCPA . . . are designed to make it possible for consumers to prosecute violations of the law and thus incentivize defendants to behave in a way that does not violate consumers' legitimate interests."); *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 272 (D. Minn. 2002) (citation omitted) ("Congress intended the 'private attorney general' enforcement of the FDCPA to facilitate the deterrent and curative effect of eliminating abusive collection practices."). The relatively modest nature of Plaintiff's victory is relevant to the reasonableness of the fee request sought, not whether she has brought a successful action under the FDCPA. *See Jerman*, 559 U.S. at 597-99 ("[T]he FDCPA contains several provisions that expressly guard against abusive lawsuits" and "courts have discretion in calculating reasonable attorney's fees under this statute.").

<u>Applying the Lodestar Method</u>

The "starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish*, 295

F.3d at 851 (citation omitted). Plaintiff's counsel has submitted an invoice containing detailed information regarding 86.3 hours spent litigating this case. (Doc. 64-1 at 4-9). Multiplying these hours by the proposed rate of $350 per hour, Plaintiff seeks $30,205 in fees. Defendant has not challenged the reasonableness of the hourly rate but contends that 41.6 of the hours were unnecessary and excessive. (Doc. 65 at 3-7).

First, the Court finds that Plaintiff's counsel's proposed hourly rate of $350 is reasonable and appropriate. "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, the ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (internal quotation omitted). District courts "may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

Christopher Roberts and David Butsch litigated this case on behalf of Plaintiff. Mr. Roberts has practiced law for approximately twelve years, dedicates 90% of his practice to consumer protection cases, and typically charges $400 per hour. Mr. Butsch has practiced consumer law for 25 years and typically charges $450 per hour. Plaintiff has cited the United States Consumer Law Survey Report 2017-2018, which suggests that the $350 hourly rate is below the average rate charged by lawyers in Missouri with Mr. Roberts' and Mr. Butsch's levels of expertise. *See* Ronald Burge, *United States Consumer Law Attorney Fee Survey Report 2017-2018*, at 115-16, http://burdgelaw.com/wp-content/uploads/2019/10/US-Consumer-Law-Attorney-Fee-Survey-Report-2017-2018.pdf (last visited Nov. 9, 2021); *see also Bumb v. United Credit and Collections, Inc.*, No. 4:20-CV-106-SPM, 2021 WL 391709, at *2 (E.D. Mo. Feb. 4, 2021) (citing same report to assess reasonableness of fees in FDCPA case). Plaintiff has also filed a Declaration by Bryan Brody, an experienced litigator of consumer protection cases in Missouri, who states that "the

hourly rate of $350/hour charged by Mr. Roberts and Mr. Butsch is fair and reasonable." (Doc. 64-2 at ¶ 9). With this substantial evidence, and considering Defendant has not made any objection on this issue, the Court finds that Plaintiff's counsel's proposed $350 per hour rate is reasonable and appropriate.

The second question is whether 86.3 hours were reasonably expended litigating this action. As indicated above, Plaintiff's counsel has provided a detailed invoice. It appears to the Court that well over half of the total hours expended came from trial preparation and attendance. Defendant has made numerous, line-by-line objections to the invoice. Generally, given Plaintiff has provided detailed documentation of how the hours were spent, the Court believes "it is not well-suited to evaluate the specific details of each of Plaintiff's time entries." *Pineda,* 2011 WL 6356866, at *2. Defendant has requested, for example, that the Court reduce the time spent drafting an opposition to a motion to transfer venue from six hours to three hours. (Doc. 66 at 3). Six hours does not seem like an obviously excessive amount for drafting such a memorandum, and the Court is not inclined to reduce such entries based on its hunch as to how long the task should take. The Court notes that Bryan Brody's Declaration affirms that the "86.3 hours in time expended . . . in litigating this case through trial is reasonable" and "counsel with less experience in consumer law . . . would have expended significantly more time." (Doc. 64-2 at ¶ 9).

Two categories of billed hours do merit specific consideration. First, both Mr. Roberts and Mr. Butsch attended trial. Mr. Butsch billed 11 hours for attending trial, as well as additional hours for trial preparation, but only asked some voir dire questions and otherwise permitted Mr. Roberts to manage the trial. Defendant contends that Mr. Butsch's attendance at trial was excessive and duplicative, and this Court should accordingly not award fees for these 11 hours. (Doc. 66 at 7). "While there is no per se rule prohibiting a litigant from having more than one attorney work on

his case, 'overlawyering' may be subject to a reduction in fees by the trial court." *Breeden v. Med. Com. Audit, Inc.*, No. 4:18-CV-1936 RLW, 2020 WL 2526916, at *3 (E.D. Mo. May 18, 2020) (citing *Kline v. City of Kansas City, Mo., Fire Dep't*, 245 F.3d 707, 709 (8th Cir. 2001)). Considering the exceptionally simple nature of this case, the Court finds that Mr. Butsch's trial attendance constituted overlawyering. The Court will incorporate this reduction into the final fee award, as discussed below. Second, the Court finds that some reduction in the total fee award is warranted because certain hours appear entirely administrative and clerical in nature. *See Breeden*, 2020 WL 2526916, at *2 (E.D. Mo. May 18, 2020) ("These are secretarial or clerical tasks, which are not compensable."). The Court cannot simply eliminate applicable billing entries since many clerical tasks, such as filing and preparing exhibits, are baked into larger time entries which include non-clerical work.[2]

*Johnson* Factors

"Courts have discretion to reduce the lodestar in appropriate circumstances," though the lodestar figure is "strongly presumed to be the proper award." *Lamberson v. Bank of America Corp.*, Civ. No. 11-335 ADM/TNL, 2012 WL 4129807, at *4 (D. Minn. Sept. 19, 2012) (citation omitted). When determining the overall reasonableness of a fee award, the Court may adjust the lodestar figure after considering twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and

---

[2] The Court notes that it does not agree with Defendant's characterization of certain tasks, such as finalizing memorandums or preparing case management schedules, as clerical.

ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. Many of these factors "usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate," *Hensley*, 461 U.S. at 434 n.9, and the degree of success obtained is the most critical factor. *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) (citing *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992)).

Plaintiff achieved limited success in this case. While the jury determined that Defendant violated the FDCPA, it awarded Plaintiff only $200 in statutory damages and nothing in compensatory damages. The FDCPA violation by Defendant was hyper-technical: Defendant informed Plaintiff her debt had "hit the credit bureaus" because they had in fact "sent" the debt to the credit bureaus, but the debt did not actually appear on Plaintiff's credit report at the time of the subject phone call. In this Court's view, Plaintiff had no plausible chance of recovering compensatory damages from a reasonable jury given the nature of her allegations. Considering Plaintiff's counsel's extensive experience, the straightforward nature of this case, and the prior employment relationship between Plaintiff and her counsel, moreover, the Court is somewhat skeptical of Plaintiff's counsel's claim that they were precluded from handling other cases due to this litigation.

Courts may adjust the lodestar rate downward where "the recovery is small or the FDCPA violation at issue is minor or technical." *Morrow v. Weinerman & Assocs., LLC*, Civ. No. 11-104 (RHK/LIB), 2012 WL 1593301, at *1 (D. Minn. May 7, 2012) (collecting cases). At the same time, the Court recognizes that the fees "need not be proportionate to the amount of damages recovered when Congress sets up a statutory scheme, such as this one, that provides for statutory damages and fee shifting." *Phenow*, 766 F. Supp. 2d at 959 (citing *Loggins v. Delo*, 999 F.2d 364,

368 (8th Cir. 1993) (acknowledging that "proportionality between the amount of damages and fee awards was not required.")). After careful consideration and with the goal of achieving "rough justice," the Court holds that a meaningful reduction of Plaintiff's requested fees is warranted. *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.").

Considering the modest damages obtained, hyper-technical FDCPA violation at issue, simplicity of this case, Plaintiff's counsel's extensive experience in this type of litigation, and inclusion of Mr. Butsch's trial attendance and preparation along with certain clerical tasks in the initial lodestar calculation, this Court finds that a 50% reduction from the requested fee award is fair, reasonable, and consistent with applicable precedent. *See Lucero v. Debt Recovery Att'ys*, Civ. No. 19-106 JAP/LF, 2020 WL 556989, at *3-4 (D.N.M. Feb. 3, 2020) (reducing fee award by more than 50% where "the insignificant conduct alleged does not justify the exorbitant price tag of this litigation"); *Jones v. Sw. Credit Sys., L.P.*, Civ. No. 17-487, 2018 WL 3388309, at *6 (E.D. Pa. July 12, 2018) (reducing FDCPA fee by 50% considering simplicity of case and experience of counsel); *McDermott v. Marcus, Emmer & Brooks, P.C.*, 53 F. Supp. 3d 312, 323 (D. Mass. 2014) (reducing lodestar by 65% in light of plaintiff's limited success). The Court believes that Defendant's request for a 75% reduction from the lodestar calculation (in addition to substantial reductions in the lodestar) is excessive and not supported by comparable precedent. *See Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 966 (8th Cir. 2012) (affirming district court's conclusion that 50% fee reduction was appropriate, but 70% reduction would be excessive).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Sierra Saxerud's Motion for Attorneys' Fees and Costs (Doc. 63) is **GRANTED in part** and **DENIED in part** as follows:

- Plaintiff's Motion for Bill of Costs in the amount of $1,700.65 is **GRANTED**.

- Plaintiff's Motion for Attorneys' Fees in the amount of $30,205.00 is **GRANTED in part**, and the requested fee award shall be **REDUCED by 50% to $15,102.50**.

**IT IS FINALLY ORDERED** that Defendant shall pay Plaintiff **$15,102.50 in attorneys' fees** and **$1,700.65 in costs** pursuant to 15 U.S.C. § 1692k(a)(3).

Dated this 9th day of November, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE